*Formatted for Electronic Distribution*                                                                                                          *For Publication*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT**

| | | |
|---|---|---|
| **In re:**<br>    **JOAN SANTAMASSINO**<br>                **Debtor.** | | **Chapter 7 Case<br># 05-10085** |
| **Joan Santamassino**<br>                **Plaintiff,**<br>        v.<br>**New Jersey Higher Education<br>Student Assistance Authority,**<br>                **Defendant.** | Filed & Entered<br>On Docket<br>August 23, 2007 | **Adversary Proceeding<br># 06-1037** |

| | | |
|---|---|---|
| *Appearances:* | *Rebecca A. Rice, Esq.*<br>*Rutland, VT*<br>*Attorney for Plaintiff* | *Jessica Elliott, Esq.*<br>*Rutland, VT*<br>*Attorney for Defendant* |

**MEMORANDUM OF DECISION
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    Joan Santamassino (the "Plaintiff" or "Debtor") initiated this adversary proceeding by filing a complaint on May 22, 2006, seeking a discharge of the student loans she owes to the New Jersey Higher Education Student Assistance Authority (the "Defendant"). The Plaintiff alleges that her responsibilities in serving as the sole, full-time caregiver for her ailing mother have made it impossible for her to earn enough to repay these loans, and that excepting this debt from discharge would impose an undue burden on her (doc. # 1). The Defendant's Answer simply indicated that it is leaving the Plaintiff to her proof (doc. # 6). On May 31, 2007, the Plaintiff filed a motion for summary judgment (doc. # 24) and a jointly executed Statement of Undisputed Facts (doc. # 25). The Defendant has filed no response to the motion for summary judgment.

    For the reasons set forth below, the Court grants the Plaintiff's motion for summary judgment.

**JURISDICTION**

    The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 157(b)(2)(I). It is undisputed that this adversary proceeding is a core proceeding.

## THE UNDISPUTED FACTS

The Court adopts the undisputed facts submitted by the parties, which relate solely to the Plaintiff's loans, repayments, and balance due (doc. # 25). In March 1983, August 1983 and August 1984, Lincoln Federal Savings & Loan made three loans to the Plaintiff, each in the amount of $5,000, all guaranteed by the Defendant. In January 1985, these loans were consolidated, with payments to begin in January 1986. The Plaintiff received a forbearance of payment from June 1, 1986 through November 30, 1986, and made sporadic payments through May, 1988. In December 1988, the Defendant paid Lincoln Federal Savings & Loan $14,330.49 on its guaranty, and was reimbursed by the federal government in February 1989. The Defendant continues to service the loan. Between February 1989 and March 2003, the Plaintiff made 107 payments to the Defendant, totaling $20,661.00. The Plaintiff has made no payments since March 2003. As of April 11, 2006, the balance owed is $16,207.17 with interest accruing at 9%. All of these facts are supported by documentation. See doc. # 25, Ex. A – F.

## DISCUSSION

Section 523(a)(8) of the Bankruptcy Code provides that:

> (a) A discharge under [certain sections of the Code] does not discharge an individual debtor from any debt –
>
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit . . .

A student loan will not be discharged unless the debtor "affirmatively secures a hardship determination." Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 450 (2004).

In the Brunner case, the Second Circuit announced the standard for "undue hardship" that this Court must apply for a debtor to have his or her student loans discharged as an undue hardship. The standard requires the debtor to establish that:

> (1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) the debtor has made good faith efforts to repay the loans.

Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2d Cir. 1987). It is the debtor's

2

burden to prove each of the three prongs of the Brunner test. In re Lehman, 226 B.R.805, 808 (Bankr. D.Vt. 1998). If a debtor cannot satisfy every prong of the Brunner test, she is not entitled to discharge the student loan. Williams v. New York State Higher Educ. Servs. Corp. (In re Williams), 296 B.R. 298, 302 (S.D.N.Y.2003) (quoting Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish ), 72 F.3d 298, 306 (3d Cir. 1995)); see also In re Thoms, 257 B.R.144, 148 (Bankr. S.D. N.Y. 2001); Lehman, 226 B.R. at 808. The debtor must prove her case by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287 (1991); In re Maulin, 190 B.R. 153 (Bankr. W.D.N.Y. 1995). The determination of undue hardship is case- and fact-specific. Id. at 156.

### *A. The "Minimal Standard" Prong*

To prove the "minimal standard" prong of the Brunner test, the Plaintiff must show that she cannot, based upon her current income and expenses, both maintain a "minimal" standard of living and repay her student loans. See In re King, 368 B.R. 358, 367 (Bankr. D.Vt. 2007).

In her affidavit attached to the motion for summary judgment, the Plaintiff states that, since 2000, "I have been the sole and fulltime caretaker for [my mother] and we live solely on her pension and social security income," which totals $3,139.28 per month; their monthly expenses total $3,505.28 (doc. # 24, Santamassino Aff. ¶¶ 8, 11, 12). Her Schedule J reveals that she earns no income (doc. # 1, #05-10085). After reviewing the affidavit, the Court finds the expenses listed are reasonable and that payment of her loans would not allow her to maintain a minimal standard of living.

The Defendant has not interposed any objection to the accuracy or reasonableness of the expenses listed on the Plaintiff's affidavit or otherwise contested the Plaintiff's right to relief under this prong. Therefore, based upon the record, the Court finds that the Plaintiff has satisfied the first prong of the Brunner standard.

### *B. The "Future Prospects" Prong*

The next question is whether excepting this student loan debt from discharge would impose an "undue hardship" upon the Plaintiff. As this Court recently indicated in King, it will apply the standard specifically articulated in Brunner when assessing this prong of the test, and must find that:

> 'additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans,' or, stated another way, '[r]equiring evidence not only of current inability to pay but of additional, exceptional circumstances, strongly suggestive of continuing inability to pay over an extended period of time, more reliably guarantees that the hardship presented is 'undue.''

King, 368 B.R. at 370 (quoting Brunner, 831 F.2d at 396). The "certainty of hopelessness" phrase, while descriptive, and adopted by several courts as a shorthand description of this requirement, cannot substitute as a standard, particularly when the Second Circuit never enunciated it. See King, 368 B.R. at 370.

3

Additional and exceptional circumstances have been described as circumstances where "the debtor experienced an illness, developed a disability, or became responsible for a large number of dependents after receiving the [student] loan." In re Thoms, 257 B.R. 144, 149 (S.D.N.Y. 2001). See King, 368 B.R. at 370-71 (crediting persuasive evidence concerning plaintiff's significant, debilitating, and long-term psychological disorders that impeded and continued to impede his ability to obtain employment); Kelsey v. Great Lakes Higher Educ. Corp. (In re Kelsey), 287 B.R. 132, 142, 144 (Bankr. D.Vt. 2001).

In the instant case, the Plaintiff has submitted an affidavit, accompanied by an affidavit of Dr. Robert Hamill, her mother's treating physician, which document the 24-hour a day/7-day a week care that the Plaintiff's mother requires. See Debtor's and Dr. Hamill's Affidavits, attached to doc. # 24. In her affidavit, the Plaintiff avers the following: Her mother was diagnosed with Parkinson's Disease ("PD") 23 years ago and began to need full-time care in 1998. The Plaintiff left her New Jersey law practice and moved with her former husband to Vermont where he would serve as the "breadwinner" and she could care for her mother in her mother's house. She and her husband divorced the next year and she lost that source of income as well as her health insurance coverage. She has cared for her mother since 2000, and they live solely on her mother's pension and social security income. The Plaintiff cleans, cooks, shops, prepares meals, gives personal care, and dispenses 12 daily medications to her mother, drives her to physician appointments, solves her problems, pays her bills, and describes herself as being "on duty 24 hours a day." (doc. # 24, Santamassino Aff.). The Plaintiff describes her mother's condition as follows:

> she has very little balance left and so will topple easily and fall if not supervised at every waking moment. At certain times during the day, as the medications cycle through her system, she has great difficulty breathing and must be supervised and placed in an upright position. She cannot use the bathroom facilities or brush her teeth alone. She cannot dress or undress herself. She is incontinent. She sleeps in a hospital bed. She needs assistance eating, taking her meds and reading the newspaper. . . .She needs to be helped out of bed in the morning and put to bed at night. She sometimes suffers PD-related hallucinations. She sometimes suffers PD-related episodes similar to seizures and fainting which are attributed to her medications' effects on her system.

(Id.). Dr. Hamill's affidavit confirms the Plaintiff's statements about her mother's condition. Dr. Hamill describes PD as "chronic and progressive," and even though Santamassino's mother is in a late stage of the disease "it is possible that she can live for several more years" (doc. # 24, Hamill Aff.). Dr. Hamill adds that it is "crucial that medications be given at the appropriate time," and that it is "much preferable for Parkinson's patients to reside at home . . . where tighter control can be maintained over the medication schedule and the patient can be in a familiar environment. . . . Ms. Santamassino cannot continue residing in her own home without twenty-four hour a day care." (Id.).

The additional and exceptional circumstances here relate to the 24-hour a day care that the Plaintiff

4

devotes to her chronically-ill mother, which makes it impossible for her to earn any income and hence, to repay her student loans. Similar to the circumstances in the Rutherford case, the Plaintiff's "relationship with her mother, and almost every other aspect of [her] adult life has been, and continues to be affected by, her mother's condition." Rutherford v. William Ford Direct Loan Prog. (In re Rutherford), 317 B.R. 865, 870 (Bankr. N.D.Ala. 2004). The evidence shows that the Plaintiff's mother's condition is long-term and the Court finds that the Plaintiff's well-documented obligation to care for her mother, who is unable to care for herself due to the effects of Parkinson's disease, establishes the "additional and exceptional circumstances" required to satisfy the second prong of the Brunner test.

### C. The "Good Faith" Prong

The final prong of the Brunner test requires a debtor to show that she has "made good faith efforts to repay the loans," Brunner, 831 F.2d at 396, and is measured by the debtor's "efforts to obtain employment, maximize income, and minimize expenses." O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn), 339 F.3d 559, 564 (7th Cir. 2003). The record reflects that the Plaintiff made payments from the inception of the loan in 1983 through her 1986 forbearance agreement, again from late 1986 through May 1988, and then made 107 payments between February 1989 and March 2003. See doc. # 25. The Plaintiff's affidavit indicates that she has sold personal property to pay for expenses, including "all [her] jewelry, professional clothes, artwork, collectibles and furniture" and drives a "vehicle which has 150,000 miles on it" (doc. # 24, Santamassino Aff.., ¶¶ 9, 13). The Court finds the record sufficient to demonstrate that the Plaintiff has made the requisite effort to maximize income and minimize expenses.

The Plaintiff has not worked or sought work since moving to Vermont in 2000 to care for her mother, but the record before the Court establishes that the Plaintiff would not have been able to work without leaving her mother without essential care. This Court agrees with the reasoning in Rutherford that a bankruptcy court can and should "consider th[e] commitment [made by the debtor-daughter to care for her ill mother] and [the plaintiff's] relationship with her mother when it considers whether [plaintiff's] circumstances will continue for a significant period and whether [the plaintiff's] actions are in good faith." Rutherford, 317 B.R. at 879. That court considered the definition of "dependency" in the Bankruptcy Code context, and concluded that it was "not limited to financial dependency." Id. at 882. The court held that the mother was "a dependent of the debtor for purposes of the Brunner test, and in particular for purposes of factors two and three," given that the debtor provided "both significant indirect financial assistance and irreplaceable non-financial assistance, to her mother." Id. at 883. As a result, the court found that the debtor's dire financial situation, caused by her being unable to work at an outside job, would continue throughout her mother's life. It also found that the debtor did not have the present ability nor would she have the future ability to pay her student loan, and that did not constitute acting in bad faith. Id. The bottom line in the Rutherford decision was that the court did not

5

condemn the debtor's "choice" of caring for her mother, rather than entering the work force to pay her student loan debt – a situation where she would also have to pay for her mother's care – and held that "excepting [plaintiff's] student loan debt from her discharge in this case will impose an undue hardship on her and her dependent." Id. at 885.

This Court applies the Rutherford rationale here. The affidavits make clear how critical it is to the well being of the Plaintiff's mother that the Plaintiff care for her on a full-time basis. After taking into account the Plaintiff's (i) repayment history, (ii) lifestyle and budget, (iii) decision not to seek employment, (iv) full-time role in taking care of her mother, and (v) liquidation of personal assets to pay expenses for both her mother and herself, this Court is persuaded that the Plaintiff has made a good faith effort to repay the loan as that term is interpreted in connection with the discharge of student loans. Accordingly, the Court finds the Plaintiff has met the third prong of the Brunner test.

## CONCLUSION

The Court finds that summary judgment is proper in this case and that the Plaintiff is entitled to judgment as a matter of law. The Court further finds that the record demonstrates that the Plaintiff has satisfied the criteria established by the Brunner case and has proved by a preponderance of the evidence that compelling her to repay her student loans would impose an undue hardship upon her and her dependent. Therefore, the Court declares the Plaintiff's student loans to the Defendant to be discharged pursuant to 11 U.S.C. § 523(a)(8) and will enter an order granting judgment in favor of the Plaintiff.

This constitutes the Court's findings of fact and conclusions of law.

August 23, 2007  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

6